J-S47001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: LCCYS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 629 MDA 2019 |

Appeal from the Order Entered March 25, 2019
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s): CP-40-DP-0000012-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: T.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: LCCYS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 630 MDA 2019 |

Appeal from the Order Entered March 25, 2019
In the Court of Common Pleas of Luzerne County Juvenile Division at
No(s): CP-40-DP-0000013-2015

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 25, 2019**

Appellant, Luzerne County Children and Youth Services ("CYS"), appeals

from the March 25, 2019 Orders denying CYS' Petitions for Permanency and

Goal Change, which requested to change the permanency plan goal for

thirteen-year-old C.P. and ten-year-old T.P. (collectively, "Children") from return to guardian to adoption.[1]  After careful review, we affirm.

The parties are familiar with the extensive procedural and factual history in this case, and we need not restate them in detail here.  Briefly, Children's biological parents are unable to provide care for Children.  Since birth, Children were residing with B.W. ("Maternal Grandmother") and K.W. ("Maternal Step-Grandfather") (collectively, "Maternal Grandparents").  In January 2015, CYS received a report that Children's younger brother suffered an unexplained fatal head injury while in the care of Maternal Grandparents.  CYS immediately obtained a Shelter Care Order and placed children in foster care.  CYS subsequently indicated Maternal Grandparents as perpetrators of physical abuse against both the deceased sibling and another younger sibling who suffered an unexplained broken clavicle.[2]

On April 2, 2015, the trial court adjudicated Children dependent based on lack of proper parental care.  In October 2015, CYS placed Children in a pre-adoptive foster home, where they continue to reside.  Professionals have diagnosed C.P. with Autism Spectrum Disorder, and both Children with ADHD and "some needs related to trauma."  N.T. Goal Change Hearing, 3/19/19, at

---

[1] This Court *sua sponte* consolidated the appeals at Nos. 629 MDA 2019 and 630 MDA 2019.

[2] Authorities did not file criminal charges against Maternal Grandparents.

22.   Children receive counseling services through Cornerstone and extra support in school.

On November 2, 2018, Children's biological mother voluntarily relinquished her parental rights and the trial court involuntarily terminated the parental rights of T.P.'s father.[3, 4]

On September 7, 2018, CYS filed a Petition for Permanency and Goal Change Hearing.  On March 19, 2019, the trial court held a hearing on CYS' Petition.  At the hearing, CYS requested that the trial court change Children's permanency goal from reunification with a guardian—Maternal Grandmother— to adoption.[5]   CYS presented testimony from Gabrielle Stelmak, CYS caseworker.  Ms. Stelmak testified that Maternal Grandmother has been fully compliant with the permanency plan and consistently participates in grief counseling through Catholic Social Services and family counseling with Children through Cornerstone Counseling.   N.T. Goal Change Hearing, 3/19/19, at 17-18; 37; 41.  Ms. Stelmak informed the court that Childrens' counselors recommended an increased visitation schedule between Maternal Grandmother and Children, which CYS implemented.  *Id.* at 28-30.  Ms.

---

[3] The termination decrees do not appear in the certified record or on the docket.  However, CYS testified to these facts and the trial court made a specific finding that parental rights were terminated in its Rule 1925(a) Opinion.  *See* N.T. Goal Change Hearing, 3/19/19, at 15-18; Trial Ct. Op., filed 5/17/19, at 6.

[4] C.P.'s biological father is unknown.

[5] Prior to the permanency goal change hearing, Maternal Step-Grandfather passed away.  *See* N.T. Goal Change Hearing, 3/9/19, at 10.

Stelmak explained that in December 2018, Maternal Grandmother and Children had four hours of unsupervised visitation per week; in January 2019 they had eight hours of unsupervised visitation per week; in February 2019 they had sixteen hours of unsupervised visitation per week; and in March 2019 they had sixteen hours of unsupervised visitation and one overnight visit per week. *Id.* at 28-30. Ms. Stelmak testified that from December to March, the visitation between Maternal Grandmother and Children was going well enough to continue increasing the amount and duration. *Id.* at 30-31.

Ms. Stelmark stated that she received a letter in court that day from Children's school indicating that, since the increase in visitation, T.P. has exhibited some concerning behaviors in school, including being "off task" and needing constant redirection. *Id.* at 22-23. Ms. Stelmark explained that Children have also exhibited some defiant behaviors within the foster home, including not following rules and talking back to foster parents. *Id.* at 43. Ms. Stelmark testified that she just learned of the school behaviors and had not yet spoken to Children's counselors about the behaviors at home. *Id.* at 27, 56-57. Ms. Stelmark testified that she does not have any concerns about the interactions between Maternal Grandmother and Children, Children are "very bonded" to Maternal Grandmother, and both Children want to return to her home. *Id.* at 37, 40.

Nevertheless, Ms. Stelmak stated that CYS does not believe that reunification with Maternal Grandmother is a feasible permanency goal for Children because Maternal Grandmother is an indicated perpetrator of physical

abuse.  *Id.* at 18-19; 40-42.  Specifically, Ms. Stelmak testifed, "[o]ther than the safety concerns that would come from the indicated status, there are no concerns regarding the relationship between [Maternal Grandmother] and [C]hildren."  *Id.* at 40.  Ms. Stelmak testified that CYS could not ensure the safety of Children in Maternal Grandmother's home because of her indicted perpetrator status and because CYS did not know what caused the injuries to Childrens' siblings while in the care of Maternal Grandparents, including the fatal injury.  *Id.* at 19, 40.

Finally, Ms. Stelmak testified that CYS is requesting that the trial court change Children's goal to adoption.  *Id.* at 20.  Children are in a pre-adoptive foster home and foster parents are willing to allow Children to maintain contact with Maternal Grandmother.  *Id.* at 20, 53.

Maternal Grandmother presented testimony from Jessica Martin and Debra Passarella, both licensed professional counselors from Cornerstone Counseling.  Ms. Martin testified that she has worked with C.P., and the family, since December 2015.  *Id.* at 68.  Ms. Martin stated that she recommended increased visitation between Maternal Grandmother and Children so that she could assess how Children responded.  *Id.* at 70.  Ms. Martin testified that visits were going well: "Children continue to do well and respond positively to the increased periods of unsupervised contact with [Maternal Grandmother]. So overall, a positive transition with the amount of time that they were spending with [Maternal Grandmother], emotionally and behaviorally."  *Id.* at 71.  Ms. Martin explained that it was typical and normal to see behavioral

issues or acting out in children that were transitioning or in the process of reunification and that the behaviors could be addressed in counseling. *Id.* at 74, 76-77. Ms. Martin testified that she believed moving towards reunification with Maternal Grandmother was the appropriate permanency goal for Children and that ceasing contact would "not be in their best interest." *Id.* at 77-78.

Ms. Passarello testified that she has worked with T.P., and the family, since December 2015. *Id.* at 87. Ms. Passarello stated that it is not uncommon for there to be a correlation between when there is change and transition in a child's life and a change in that child's behavior. *Id.* at 95. Ms. Passarello explained several times that some of T.P.'s reported behaviors could be related to medication management rather than organic circumstances. *Id.* at 89, 92-93, 95. Ms. Passarello stated that she always addresses T.P.'s reported behaviors in her therapy sessions with him. *Id.* at 94. Finally, Ms. Passarello testified that she believed it was in T.P.'s best interest to increase visitation with Maternal Grandmother and work towards reunification. *Id.* at 90, 93.

At the conclusion of the hearing, Children's court-appointed Guardian Ad Litem ("GAL") informed the court that she believed reunification continued to be the appropriate permanency goal for Children and that she did not recommend changing Children's permanency goal to adoption. *Id.* at 102.

On March 25, 2019, the trial court, *inter alia*, denied CYS' request to change Children's permanency goal to adoption, ordered the permanency goal

to remain return to guardian, and made a finding that Maternal Grandmother was in full compliance with her permanency plan.

CYS timely appealed. Both CYS and the trial court complied with Pa.R.A.P. 1925.

CYS raises the following issue for our review: "Whether the trial court committed an error of law or otherwise abused its discretion in denying [CYS]'s Petition to change [C]hildren's placement goal to adoption, as adoption is the appropriate and feasible goal for [C]hildren and a change of goal to adoption would be in [C]hildren's best interest." CYS' Br. at 6 (some capitalization omitted).

We review the denial of a petition for goal change for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). In order to conclude that the trial court abused its discretion, this Court "must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record." *Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019).

Our standard of review in dependency cases requires this Court "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *R.J.T.*, 9 A.3d at 1190. This Court is "not in a position to make the close calls based on fact-specific determinations." *Id.* Rather, "we must defer to the trial judges who

see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan." *Id.* Notably, even if this Court "would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court." *Id.*

The overarching purpose of the Juvenile Act, which governs goal change requests, is "[t]o preserve the unity of the family whenever possible[.]" 42 Pa.C.S. § 6301(b)(1)). At each dependency review hearing, the trial court must consider, *inter alia*, the continuing necessity for and appropriateness of the Child's placement, and the appropriateness and feasibility of the current placement goal for the child. 42 Pa.C.S. § 6351(f)(1), (4). The focus of goal change proceedings, like all dependency proceedings, is on "the safety, permanency, and well-being of the child and the best interests of the child must take precedence over all other considerations." *H.J.*, 206 A.3d at 25 (citation omitted).

"[T]he agency has the burden to show [that] a goal change would serve the child's best interests[.]" *In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010) (citations omitted). If reunification with the child's parent or guardian is not in the child's best interest, the trial court may determine that adoption is the appropriate permanency goal. *H.J.*, 206 A.3d at 25; 42 Pa.C.S. § 6351(f.1)(2). Notably, "[a]doption may not be an appropriate permanency goal if severing an existent parent-child bond would have a

detrimental effect on a child." *Id.* at 25. Further, "[b]ecause the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan." *R.M.G.*, 997 A.2d at 347 (citation omitted).

In their sole issue on appeal, CYS avers that the trial court abused its discretion when it denied CYS' Petition to change Children's permanency goal to adoption. CYS' Br. at 6. CYS argues that the evidence demonstrated that reunification with Maternal Grandmother is not in Children's best interest because Maternal Grandmother has failed to provide an explanation as to how Children's siblings suffered injuries while in her care, and, therefore, CYS cannot ensure Children's safety in Maternal Grandmother's home. *Id.* at 12-13. Rather, CYS contends, the evidence demonstrated that a goal change to adoption was in Children's best interest because Children have lived in a pre-adoptive foster home that is meeting their needs, and the foster parents have agreed to allow Children to have contact with Maternal Grandmother if they adopt Children. *Id.* at 13-14.

The trial court opined:

> The [c]ourt did not err in denying the goal change from reunification to adoption. Both [C]hildren's counselors and the Guardian Ad Litem did not find that it is in the best interest of [C]hildren for the visits with [] Maternal Grandmother to terminate. In fact, they both indicate that [] Maternal Grandmother should continue her overnight periods of visitation and that further expansion of her visitation should be explored. . . . In conclusion, the [c]ourt finds that it is in the best interest of [Children] to maintain the goal of reunification with [] Maternal Grandmother, in light of Maternal Grandmother's full compliance

> with the court ordered services. Furthermore, the [c]ourt agrees with [C]hildren's counselors and the Guardian Ad Litem who recommended that the goal should remain reunification with [] Maternal Grandmother. The [c]ourt is also aware of the close bond between both [C]hildren and [Maternal] Grandmother[,] which was confirmed by Ms. Stelmak, the Guardian Ad Litem, and [C]hildren's counselors.

Trial Ct. Op., filed 5/17/19, at 3, 19-20. Our review of the record supports the trial court's findings.

Instantly, the trial court placed a great deal of weight on Ms. Martin and Ms. Passarella's testimony, who both recommended to the court that a permanency goal of reunification with Maternal Grandmother is in Children's best interest. *Id.* In turn, the trial court placed less weight on Ms. Stelmak's testimony, and found portions of it to be contradictory. Specifically, the trial court noted that: Ms. Stelmak testified that CYS had safety concerns about Children reunifying with Maternal Grandmother, but CYS did not send a caseworker to check on Children during their first overnight visit; Ms. Stelmak testified that CYS had concerns over Children's behaviors after visits, but acknowledged that the behaviors were not so concerning that she contacted Childrens' therapists to discuss; Ms. Stelmak testified that adoption was the appropriate permanency goal for Children, despite the fact that she does not have any concerns about the interaction between Maternal Grandmother and Children and they have a strong bond. *Id.* at 6-7, 11-12, 14-15. We decline to reweigh the evidence and the credibility determinations of the trial court.

In sum, the record supports the trial court's finding that a goal change to adoption is not in Children's best interest. We decline to reweigh the

evidence or disturb the trial court's credibility determinations. Thus, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2019